IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 97 cr 00154 ZLW

UNITED STATES OF AMERICA,

       Plaintiff,

v.

DAVID BARBE,

       Defendant.

_____

### DEFENDANT'S OBJECTION TO VIOLATION REPORT
_____

       David Barbe, defendant, files this objection to the Supervised Release Violation Report[1] prepared August 28, 2009, and received by counsel August 31, 2009.

**Background.**

       On July 25, 1997, Mr. Barbe entered a guilty plea to a stolen mail charge. He was sentenced on October 6, 1997, to 33 months imprisonment, consecutively to Colorado Department of Corrections sentences he was serving at the time. The Court also imposed three years' supervised release.

       Following the completion of the prison sentence sometime in 2003, Mr. Barbe began his supervised release term. On July 25, 2003, Mr. Barbe's supervised release was revoked. The Court imposed a sentence of 14 months imprisonment and 34 months of supervised release. On

---

[1] The Supervised Release Violation Report will be referred to hereafter as the Violation Report.

June 7, 2004, Mr. Barbe's conditions of supervised release were modified to require him to live in a halfway house for up to 120 days.[2]

On October 22, 2004, a warrant issued based on a Petition on Probation and Supervised Release. The Petition alleged four Grade C violations.

Mr. Barbe was arrested on the federal warrant on December 25, 2004. Instead of being brought to federal court to answer the allegations in the petition, federal marshals relinquished jurisdiction to Larimer County which then prosecuted Mr. Barbe on auto theft related charges. *See* Supplemental Petition filed August 26, 2009, allegation 6, Violation Report.

On February 3, 2005, Mr. Barbe was sentenced in the Larimer County case to six years imprisonment. While the order of the Larimer County court directed that its sentence run concurrently with the federal sentence (*see* Supplemental Petition, allegation 6), federal authorities took no steps to bring Mr. Barbe to court, but simply left their warrant as a detainer. Consequently, by the time of the scheduled revocation hearing, Mr. Barbe will have been in continuous custody for just under five years.[3]

**The sentence of 34 months supervised release imposed July 25, 2003, was illegal**

The term of supervised release Mr. Barbe is charged with violating is the 34 months imposed on July 25, 2003. This was in addition to 14 months imprisonment. This period of supervised release, by law, could not have been more than three years because the underlying

---

[2] It may be that this date was a bit later, August 23, 2004. It also appears there may have been another modification October 5, 2004, requiring mental health treatment.

[3] When Mr. Barbe finished his Larimer County sentence, he was taken from the DOC to Jefferson County where, on July 13, 2009, he was sentenced on a theft case that had been pending there since 2004 or 2005. *See* Supplemental Petition, Violation # 7.

offense was a class D felony. Violation Report, page 4, Statutory Provisions. As the probation officer notes in the Violation Report, any period of supervised release imposed to follow prison must be reduced by the length of the prison sentence. Here, the prison term was 14 months, meaning the maximum allowable term of supervised release the court could have imposed was 22 months. (36 months minus the 14 months of imprisonment.) Instead, the Court imposed a sentence of 34 months, which, Mr. Barbe contends, makes the supervised release term a legal nullity, void *ab inito*. *See United States v. Ross*, 9 F.3d 1182, 1188 (7th Cir. 1993), *vacated on other grounds*, 511 U.S. 1124, 114 S.Ct. 2129, 128 L.Ed.2d 860 (1994).(revocation of probation imposed in violation of law not effective.)[4] *See also United States v. Sias*, 227 F.3d 1109, 1010 (8th Cir. 1996)(a sentence that exceeds the statutory maximum is an illegal sentence and plain error.)

### There can be no supervised release term imposed to follow a ten-month sentence of imprisonment

Besides recommending the maximum jail term, the probation office also recommends Mr. Barbe get 12 months of supervised release to follow. Violation Report, page R-1. If this advice is followed, yet another illegal term of supervised release will have been imposed.

Once a defendant in Mr. Barbe's circumstance has been sentenced to the maximum aggregated prison term for violations of supervised release, here, two years, the Court may not impose any additional supervised release to follow. *See United States v. Roberts*, 227 FedAppx. 819, 821 (11th Cir. 2007).

---

[4] As did the defendant in *Ross*, Mr. Barbe is objecting to the illegal nature of his sentence to 34 months supervised release in the context of this revocation proceeding.

## **A proposed alternative**

If the Court were to follow the recommendation of the probation officer, Mr. Barbe would serve ten months in prison and be returned to the street with no federal supervised release to follow. (He will be on state parole.) He would be without the resources of the federal probation office or the guidance of a federal probation officer to assist him with his transition to civilian life.

This transition is a significant one considering that Mr. Barbe has been in custody, as mentioned, for almost five years without a break. He is 58 years old, and, as the history of this case reflects, has a demonstrated need for mental health assistance.

Mr. Barbe proposes, as an alternative to the "ten months and out" recommendation that the Court continue him on supervision –there should be about 22 months remaining – conditioned on the maximum period of residence in a halfway house or RRC. It is believed this would be six months. This would keep Mr. Barbe on federal supervision for 22 months, versus zero months, and give him some structure and stability, as well as a place to live, while he tries to return to society as a law abiding and productive member. The risk for Mr. Barbe is that he will be under this Court's jurisdiction for nearly two years so that if he commits and new criminal conduct, or otherwise violates the conditions imposed, in addition to whatever he may receive as a result of a parole violation, he will face federal jail time. The benefit to Mr. Barbe is that rather than sitting around in some federal institution for 10 months, after which he is rolled to the curb, homeless, jobless, penniless, he will be in a RRC, a place where he can live while working and saving a little money, where he can get stabilized, and, hopefully, find a place to reside once he is released.

## **A proposed alternative**

If the Court were to follow the recommendation of the probation officer, Mr. Barbe would serve ten months in prison and be returned to the street with no federal supervised release to follow. (He will be on state parole.) He would be without the resources of the federal probation office or the guidance of a federal probation officer to assist him with his transition to civilian life.

This transition is a significant one considering that Mr. Barbe has been in custody, as mentioned, for almost five years without a break. He is 58 years old, and, as the history of this case reflects, has a demonstrated need for mental health assistance.

Mr. Barbe proposes, as an alternative to the "ten months and out" recommendation that the Court continue him on supervision –there should be about 22 months remaining – conditioned on the maximum period of residence in a halfway house or RRC. It is believed this would be six months. This would keep Mr. Barbe on federal supervision for 22 months, versus zero months, and give him some structure and stability, as well as a place to live, while he tries to return to society as a law abiding and productive member. The risk for Mr. Barbe is that he will be under this Court's jurisdiction for nearly two years so that if he commits and new criminal conduct, or otherwise violates the conditions imposed, in addition to whatever he may receive as a result of a parole violation, he will face federal jail time. The benefit to Mr. Barbe is that rather than sitting around in some federal institution for 10 months, after which he is rolled to the curb, homeless, jobless, penniless, he will be in a RRC, a place where he can live while working and saving a little money, where he can get stabilized, and, hopefully, find a place to reside once he is released.

If the Court is inclined to follow this alternative approach. Mr. Barbe would withdraw his objection to the legality of the June 25, 2003 sentence, and admit to the violations alleged.

Respectfully submitted,

RAYMOND P. MOORE
Federal Public Defender


s/ Warren R. Williamson
Warren R. Williamson
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Rick_Williamson@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2009, I electronically filed the foregoing **DEFENDANT'S OBJECTION TO VIOLATION REPORT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

James Hearty, AUSA
James.Hearty@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Veronica Ramirez, USPO (via email)
veronica_Ramirez@cod.uscourts.gov

David Barbe (via Mail)
27556-013
c/o FDC Englewood

s/ Warren R. Williamson
Warren R. Williamson
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Rick_Williamson@fd.org
Attorney for Defendant